## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GREGORY BONAPARTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07–0749 (HHK) |
| | ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS OR,
## IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

### INTRODUCTION

Defendant, United States Department of Justice, by and through undersigned counsel,

respectfully files this reply in support of its Motion to Dismiss, or in the Alternative, for

Summary Judgment.  This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, and the Privacy Act of 1974 ("the Privacy Act"), 5 U.S.C. § 552a, and pertains to the

processing of Plaintiff's FOIA/Privacy Act request by the Executive Office for United States

Attorneys ("EOUSA"), United States Department of Justice ("DOJ").  On April 24, 2007,

Plaintiff, a federal inmate, initiated this action by filing a Complaint, in which he challenged the

adequacy of EOUSA's responses to his FOIA request.  See Docket Entry No. 1 ("Compl.").

On June 28, 2007, the undersigned counsel filed a Memorandum in Support of

Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment.  See Docket Entry

No. 9 ("Def.'s MTD/MSJ").  In that brief, Defendant explained that Plaintiff had failed to

exhaust his administrative remedies before filing suit.  Specifically, Defendant indicated that

Plaintiff had run afoul of the requirements set forth in DOJ's FOIA regulations, at 28 C.F.R.

§ 16.9, that a FOIA requester who is "dissatisfied with a [DOJ] component's response" to his or

her FOIA request "appeal [the] adverse determination denying [the] request, in any respect, to the

Office of Information and Privacy, U.S. Department of Justice," before seeking judicial review,

and that the appeal must be "in writing" and be "received by the Office of Information and

Privacy within 60 days of the date of the letter denying your request."  See id. at 5-6, 9-14.

    As Defendant noted, EOUSA mailed two separate letters dated November 15, 2006 to

Plaintiff which collectively contained the agency's response to his FOIA request.  See id. at 3-4;

Def.'s MTD/MSJ, Exhibit 2, Declaration of John F. Boseker ("Boseker Decl.") ¶¶ 9, 12 and

Exhibits C and E to Boseker Decl.; see also Compl.. ¶¶ 10-11, Exhibit ("Ex.") A to Compl..  As

Defendant noted, each of these letters had advised Plaintiff that "[t]his is the final action on this .

. . request," that "[y]ou may appeal this decision on this request by writing within 60 days from

the date of this letter to the Office of Information and Privacy, United States Department of

Justice . . .," and that "[i]f you are dissatisfied with the results of such administrative appeal,

judicial review may thereafter be available in U.S. District Court, 28 C.F.R. § 16.9."  See Def.'s

MTD/MSJ at 3-4; id.., Exhibits C and E to Boseker Decl..

    Defendant noted that Plaintiff's claim that he had mailed an appeal to OIP in February

2007 (which he had made in his Complaint) was belied by the fact that OIP had no record of ever

having received an appeal letter from him and, in any event, was irrelevant since, even if it was

true, Plaintiff's appeal was untimely as it had not been mailed to, much less "received," by OIP,

"within 60 days of" November 15, 2006, as the regulations require.  See Def.'s MTD/MSJ at 5-6,

9-14. Defendant submitted two declarations in support of his claim that OIP never received any appeal from Plaintiff. See Boseker Decl. ¶¶ 10, 13-14; Def.'s MTD/MSJ, Ex. 3 Declaration of Chiquita J. Hairston ("Hairston Decl.") *generally*.

Defendant's opening brief also explained that, even if Plaintiff was deemed to have properly exhausted his administrative remedies, the EOUSA conducted an adequate search and produced all of the records that it had that were responsive to Plaintiff's request, and this is all the law requires. See id. at 14-16. Defendant submitted a declaration to establish the adequacy of its search. See Boseker Decl. *generally*. The brief also noted, in passing, that to the extent that Plaintiff sought to use this action as a vehicle to challenge the adequacy and timing of the FOIA response he had received from the National Personnel Records Center, this portion of Plaintiff's action should be dismissed for failure to join a necessary party, as the National Personnel Records Center is not a part of EOUSA or DOJ. See id. at 14, n. 3.

On August 10, 2007, Plaintiff filed an Opposition to Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment. See Docket Entry No. 11, Plaintiff's Memorandum of Points and Authorities in Support of Opposition to Defendant's Motion to Dismiss, or in the Alternative for Summary Judgment ("Pl.'s Opp." or "Opposition"). In that filing, Plaintiff claims that he did not receive either of EOUSA's November 15, 2006 letters until December 26, 2006, asserts that he mailed an administrative appeal to the OIP on February 2, 2006, and argues that his purported mailing of an appeal letter on February 2, 2006 satisfied the dictates of 28 C.F.R. § 16.9 because it occurred within sixty days of December 26, 2006, the date on which he ostensibly received EOUSA's November 15, 2006 letters. See id. at 2-4, 10-11. Plaintiff also argues that OIP did not timely respond to the appeal letter which he claims to have sent and that

3

consequently, by operation of law, he has constructively exhausted his appeal.  See id.at 8-9.  In

addition, Plaintiff argues that EOUSA's responses to his FOIA request were unreasonable and

inadequate.  See id. at 11-16.  For the reasons set forth below, this Court should reject each of

Plaintiff's latest arguments.

## ARGUMENT

**I.      Plaintiff Has Not Met His Burden of Establishing that he has Properly Exhausted his Administrative Remedies by Filing a Timely Appeal With the OIP**

**A.      To Exhaust Under the FOIA Statute and DOJ's Regulations, Plaintiff Must Show that His Appeal was Received by OIP (Not Just Mailed to It) 60 Days After the Date of EOUSA's FOIA Letters (Not the Date He Received Them)**

As Defendant noted in his opening brief, exhaustion of administrative remedies is

required under the FOIA before a party can seek judicial review.[1]  More specifically, this Court

has noted that "[t]he statutory scheme of the FOIA provides for an administrative appeal process

following an agency's initial response to a request."  See Schoemann v. Federal Bureau of

Investigation, 2006 W.L. 1582253, *11 (D.D.C. 2006) ("Schoemann") (citing 5 U.S.C.

§ 552(a)(6)(A)(i), (ii); see also Def.'s MTD/MSJ at 10.  Both the D.C. Circuit and this Court

---

[1]  See, e.g., Def.'s MTD/MSJ at 9-10; Oglesby v. United States Dep't of the Army, 920 F.2d 57, 61-62 (D.C. Cir. 1990) (observing that "[c]ourts have consistently confirmed that the FOIA requires exhaustion of this appeal process before an individual may seek relief in the courts"); Dettmann v. United States Dep't of Justice, 802 F.2d 1472, 1477 (D.C. Cir. 1986) ("[a]s this court has recently had occasion to state in the clearest of language, '[e]xhaustion of such [administrative] remedies is required under the Freedom of Information Act before a party can seek judicial review'") (internal citations omitted); Stebbins v. Nationwide Mutual Insurance Co., 757 F.2d 364, 366 (D.C. Cir.1984); Crooker v. United States Secret Service, 577 F.Supp.1218, 1219 (D.D.C. 1983); Greenberg v. U.S. Dep't of Treasury, 10 F.Supp.2d 3, *22 (D.D.C. 1998.) ("[t]he possibility that administrative review may obviate the need for judicial review is particularly important in FOIA cases, because FOIA cases require district judges to take time out of their busy schedules to 'acquire access to reams of paper, make intensive review of that material, and reach document-specific conclusions.'").

4

have recognized that "an agency's response [to a FOIA request] 'is sufficient for purposes of requiring an administrative appeal if it includes: the agency's determination of whether or not to comply with the request; the reasons for its decision; and notice of the right of the requester to appeal to the head of the agency if the initial agency decision is adverse.'" See id. at *11 (citing Oglesby, 920 F.2d at 65). Accordingly, "if an agency's initial response to a FOIA request satisfies these elements, the requestor must first appeal the decision to the proper agency authority prior to seeking judicial review." See Schoemann, 2006 W.L. 1582253 at *11. In this case, it is evident that each of these requirements were met by EOUSA's letters dated November 15, 2006, and Plaintiff does not appear to suggest otherwise. See, e.g., Def.'s MTD/MSJ at 3-4, 11-12; Boseker Decl. ¶¶ 9, 12, Exhibits B, C, D, and E to Boseker Decl.; Pl.'s Opp. at 2-4; Pl.'s Decl. ¶¶ 5-14; Exhibit C to Pl.'s Decl.; Pl.'s SMFD ¶¶ 1-10. Consequently, Plaintiff was required by the FOIA statute to file an administrative appeal before bringing suit. See, e.g., Schoemann, 2006 W.L. 1582253 at *11.

As Defendant observed in his opening brief, the FOIA statute requires that requests must be made "in accordance with [the agency's] published rules stating the time, place, fees (if any), and procedures to be followed . . . ." See 5 U.S.C. § 552(a)(3) (); 28 C.F.R. §§ 16.1 et. seq. (DOJ's FOIA regulations); Def.'s MTD/MSJ at 10-11. With specific regard to the administrative appeal requirement, DOJ's FOIA regulations instruct requesters that "[i]f you are dissatisfied with a component's response to your request, you may appeal an adverse determination denying your request, in any respect, to the Office of Information and Privacy, U.S. Department of Justice, Flag Building, Suite 570, Washington, DC 20530- 0001" and that "[y]ou must make your appeal in writing and it must be received by the Office of Information and Privacy within 60 days

of the <u>date of the letter denying your request</u>." <u>See</u> 28 C.F.R. § 16.9(a) (emphasis added); <u>see</u> <u>also</u> Def.'s MTD/MSJ at 11. The regulations further caution requesters that "[i]f you wish to seek review by a court of any adverse determination, you must <u>first</u> appeal it under this section." <u>See</u> 28 C.F.R. § 16.9(c); <u>see also</u> Def.'s MTD/MSJ at 11. Defendant also noted in his opening brief that courts within this Circuit have not hesitated to dismiss FOIA actions based on a failure to timely file administrative appeals.[2]

### A.    Plaintiff has Not Established that He Mailed an Appeal Letter on February 2, 2007, and Even if He Could, This Would Not Demonstrate Exhaustion

Plaintiff claims that he mailed an appeal letter to OIP on February 2, 2007. <u>See, e.g.</u>, Pl.'s Opp. at 4 & n. 1; <u>id.</u> at 9, 11; Docket Entry No. 11-3, Declaration in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Decl.") ¶¶ 16-17; Docket Entry No. 11-2, Plaintiff's Statement of Material Facts in Dispute ("Pl.'s SMFD") ¶¶ 12-13. However, the only documentary evidence he has ever provided in support of this claim is a notarized copy of a letter, bearing that date. <u>See, e.g.</u>, Compl., Ex. B; Pl.'s Decl., Ex. E. This establishes no more than that the letter exists in Plaintiff's files. It reveals nothing about when it was created or where if anywhere it was sent. Specifically, Plaintiff has produced no evidence to support the claim that this letter was ever mailed to (much less received by) the DOJ's OIP. In contrast, the

---

[2] <u>See, e.g.</u>, Def.'s MTD/MSJ at 11; <u>Oglesby</u>, 920 F.2d at 61; <u>Hidalgo v. FBI</u>, 344 F.3d 1256, 1258-59 (D.C. Cir. 2003) (finding that "[b]ecause Hidalgo did not appeal the FBI's denial to the Office of Information and Privacy (OIP) of the United States Department of Justice (DOJ) as required under the DOJ regulations, we conclude Hidalgo failed to exhaust his administrative remedies and, accordingly, we vacate the district court's summary judgment and remand to the district court to dismiss the complaint for failure to exhaust"); <u>Clemmons v. U.S. Dept. of Justice</u>, 2007 W.L. 1020796, *5 (D.D.C. 2007) (ruling that "Plaintiff's claims under the FOIA fail because he never filed an appeal to the OIP as required to exhaust his administrative remedies").

EOUSA has unequivocally declared in two declarations that no appeal letter was ever received by OIP from Plaintiff concerning the FOIA determinations at issue in this case.  See Boseker Decl. ¶¶ 10, 13-14; Hairston Decl. ¶¶ 2-8.  Thus, what the court in Shoemann found was true with respect to the Plaintiff in that case is equally true for the Plaintiff here: "without a copy of a stamped envelope showing the mailing of the appeals, or a returned receipt certifying the actual receipt of the request by the agency, Plaintiff cannot establish an essential element of the statutory requirements under FOIA requiring an agency's actual receipt of the appeal as a precursor to exhausting all administrative remedies."  See Schoemann, 2006 W.L. 1582253 at *12.  After all, as this court has further noted on more than one occasion:

> The burden of producing evidence of a proper appeal is on the person requesting documents under the FOIA.  Otherwise, the exhaustion doctrine would be a nullity. If a party could avoid the exhaustion requirement merely by asserting that they had pursued all available administrative relief, administrative agencies would be placed in the position of having to prove the negative.

See, e.g., Schoemann, 2006 W.L. 1582253 at *11-12; see also Bestor v. Cent. Intelligence Agency, No. Civ. A 04-2049(RWR), 2005 W.L. 3273723, at *4 (D.D.C. Sept. 1, 2005).

In any event, even if Plaintiff could establish that he mailed an appeal letter on February 2, 2007 (which he cannot), this would do him no good.  It is not sufficient under the FOIA statute and DOJ's FOIA regulations that an administrative appeal be mailed by a requester; the requester only discharges his or her administrative appeal obligation and triggers a reciprocal obligation on the part of the agency to respond to his or her appeal, when a timely appeal is received by the relevant agency component, in this case OIP.  See 5 U.S.C. § 552(a)(6)(A)(ii) (providing that "[e]ach agency . . . shall . . . make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal" and

only then, "[i]f on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person making such request of the provisions for judicial review of that determination . . .") (emphasis added); <u>Schoemann</u>, 2006 W.L. 1582253 at *12 (making this observation with respect to the FOIA statute); 28 C.F.R. § 16.9(a) (instructing that "[i]f you are dissatisfied with a component's response to your request, you may appeal an adverse determination denying your request, in any respect, to the [OIP] . . . " and. that "[y]ou must make your appeal in writing and it <u>must be received</u> by the Office of Information and Privacy within 60 days of the date of the letter denying your request") (emphasis added).

Accordingly, this Court should reject Plaintiff's argument that OIP had a legal obligation to respond to the appeal letter which he claims to have mailed (but which OIP never received), within twenty days of February 2, 2007, the date when Plaintiff claims he mailed that letter, and that he constructively exhausted his administrative appeals as a result of OIP's failure to do so. <u>See</u> Pl.'s Opp. at 8-9. This argument flies in the face of the FOIA statute which only requires an agency to respond to an appeal when and if it actually <u>receives</u> that appeal. <u>See</u> 5 U.S.C. § 552(a)(6)(A)(ii) (providing that "[e]ach agency . . . shall . . . make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the <u>receipt</u> of such appeal") (emphasis added).

Even if Plaintiff could establish that OIP <u>received</u> an appeal letter from him on February 2, 2007 (which he has not claimed and cannot establish), it would do him no good because such an appeal would have been untimely. Under DOJ's FOIA regulations, a requester's appeal "must be received by the Office of Information and Privacy within 60 days of <u>the date of the letter</u> denying [the] request." <u>See</u> 28 C.F.R. § 16.9(a) (emphasis added). The "date of the letter[s]" at

issue in this case were each November 15, 2006, as Plaintiff admits, even if he insists elsewhere in his brief on referring to them as December 26, 2006 letters (referencing the date on which he claims to have received them).  See, e.g., Compl., Ex. A; Pl.'s Opp. at 2-3, 10-11; Pl.'s Decl. ¶¶ 5, 7-10, 12-15; Pl.'s SMFD ¶¶ 1, 3-4, 6, 8-11; Def.'s MSJ/MTD at 3-4; 11-12; Boseker Decl. ¶¶ 9, 12 and Exhibits C and E to Boseker Declaration.  Thus, even if OIP had received Plaintiff's appeal on February 2, 2007, it would have received it on a date 79 days after "the date of the letter denying your request," and thus Plaintiff's appeal would have been significantly untimely even if it had been  received by OIP on the same date on which he alleges it was mailed.

> **B.      The Delay in Plaintiff's Receipt of EOUSA's November 2006 FOIA Response Was Plaintiff's Own Fault; In any Event, it Did Not Prejudice Him, and Does Not Excuse or Explain His Failure to File a Timely Appeal With the OIP**

Plaintiff makes much of the fact that there was some delay in his receipt of the November 15, 2006 letters.  See, e.g., Pl.'s Opp. at 2-3, 10-11; Pl.'s Decl. ¶¶ 3, 5-8; Pl.'s SMFD ¶¶ 1-4.  It appears that there was in fact some delay in Plaintiff's receipt of these letters, a fact of which the undersigned counsel was unaware at the time that he filed Defendant's opening brief.[3]

However, Plaintiff only has himself to blame however for any delay in his receipt of

---

[3]  The undersigned counsel for Defendant was unaware that there had been any delay in Plaintiff's receipt of EOUSA's November 15, 2006 responses to his FOIA request at the time that he filed his opening brief.  The undersigned counsel was only informed by the agency counsel assigned to this matter of this fact and the surrounding circumstances recently, subsequent to both the filing of Defendant's opening brief and the filing of Plaintiff's Opposition brief.  However, as is explained in greater detail herein, that delay was due to Plaintiff's own failure to inform EOUSA of his change of address.  EOUSA behaved reasonably in first mailing its response letter to Plaintiff's last known address (the address listed on his initial request) and then to his new address when it had become apparent that he was no longer to be found at the original address.  In any event, as is explained in this section, the delay is of no legal significance since the regulatory deadline for Plaintiff's appeal was 60 days after the date of each response letter, not the date of Plaintiff's receipt of them.

EOUSA's November 15, 2006 letters.  Plaintiff neglects to mention in his Opposition that when

he mailed his April 26, 2006 FOIA request to EOUSA, he sent it in an envelope bearing the

following return address:

> Gregory Bonaparte
> # 22786-018, C2-0010
> Federal Correctional Institution
> 2680 Hwy. 301 South
> Jessup, Georgia 31599

See Copy of Envelope which contained Plaintiff's April 26, 2006 FOIA request, and which

contains a stamp indicating receipt by EOUSA on May 9, 2006 (attached hereto as Exhibit 1).

This was in fact Plaintiff's address until approximately May 26, 2006, when he was transferred to

another prison, ultimately arriving in Federal Correctional Institution in Loretto, Pennsylvania on

or around June 15, 2006.  See Def.'s MTD/MSJ, Ex. 1, Public Information Inmate Data for

Plaintiff at 001; see also Pl.'s Opp. at 10 (noting that Plaintiff "had already transfer[r]ed on May

25, 2006 from that Federal Correctional Institution to FCI-Loretto, Pennsylvania.")

    Nowhere in his filings does Plaintiff claim or even suggest that he ever put EOUSA on

notice of the fact that he had been moved from the Federal Correctional Institution in Jessup,

Georgia after the submission of his FOIA request.  See Pl.'s Opp. *generally*; Pl.'s Decl.

*generally*; Pl.'s SMFD *generally*.  In view of the fact that Plaintiff had mailed his FOIA request

to EOUSA in an envelope which indicated that he was housed in the Federal Correctional

Institution in Jessup, Georgia, it was entirely reasonable for the agency to mail its responses to

that address, in the absence of any indication from anyone that his address had changed.  This

EOUSA did on November 15, 2006.  See Copy of Envelope which contained EOUSA's

November 15, 2006 response to Plaintiff's FOIA request, addressed to the address he had

10

provided in Jessup, Georgia (attached hereto as Exhibit 1); Pl.'s Opp. at 2-3, 10; Pl.'s Decl. ¶ 5;

Pl.'s SMFD ¶ 1.  It appears that the November 15, 2006 letter was refused by Jessup, Georgia

because Plaintiff was no longer there, and returned to the EOUSA where it arrived on December

19, 2006.  See Copy of Envelope which contained EOUSA's November 15, 2006 response to

Plaintiff's FOIA request, bearing refused stamp and another stamp indicating that it arrived back

at EOUSA on December 19, 2006 (attached hereto as Exhibit 1); Pl.'s Opp. at 2-3, 10; Pl.'s Decl.

¶ 6; Pl.'s SMFD ¶ 2.  By Plaintiff's admission, EOUSA then somehow ascertained Plaintiff's

new address, and on December 22, 2006, a mere three days after EOUSA receiving the returned

letter, it resent the November 16, 2006 letter to Plaintiff at his new address.  See Copy of

Envelope which contained EOUSA's November 15, 2006 response to Plaintiff's FOIA request,

bearing notation indicating that it was resent on December 22, 2006 (attached hereto as Exhibit

1); Pl.'s Opp. at 2-3, 10; Pl.'s Decl. ¶ 7; Pl.'s SMFD ¶ 3.  Plaintiff states that he then received the

November 15, 2006 letter on December 26, 2006.  See Pl.'s Opp. at 2-3, 10; Pl.'s Decl. ¶ 8; Pl.'s

SMFD ¶ 4.

It was Plaintiff's responsibility to notify the agency from which he was requesting

documents of any changes in his address.  EOUSA behaved more than reasonably under the

circumstances, sending its FOIA response first to the address Plaintiff had provided, and then

when it became apparent that he was no longer there, promptly determining Plaintiff's new

address and re-sending the FOIA response to that new address.  As the 10th Circuit noted of

another agency in even less favorable circumstances:

Based on our de novo review of the record, we conclude there is no pattern of unreasonable delay in the OIG's responses to plaintiff's FOIA requests in this case. The OIG sent a response to plaintiff within twenty days of the receipt of his FOIA request. <u>Though the response was initially sent to an incorrect address, the OIG immediately resent the response to plaintiff's correct address, and it continued thereafter to correspond with plaintiff throughout its search process.</u> Plaintiff complains about delay in his earlier FOIA requests, but there was no finding of delay in the first FOIA action against the OIG, and plaintiff voluntarily dismissed his second FOIA complaint.

<u>See</u> <u>Liverman v. Office of Inspector General</u>, 139 Fed.Appx. 942, 945 (10th Cir. 2005) (emphasis added). Here, by contrast, EOUSA did not send its response to an "incorrect address": rather it sent its response to Plaintiff's last known address- the address he had given the agency when he submitted his FOIA request- which was no longer his address by the time of the agency's response because he had been moved to another prison without EOUSA's knowledge. As soon as EOUSA was made aware of the move, it resent the response letters to Plaintiff.

In any event, any delay in Plaintiff's receipt of EOUSA's November 15, 2006 letters is of no legal relevance to the question of whether he properly exhausted, and Plaintiff's argument to the contrary is clearly premised on a misreading of the relevant regulation. Plaintiff argues that the 60 day clock applicable to appeal requests under 28 C.F.R. § 16.9(a), did not start until he received EOUSA's November 15, 2006 responses to his FOIA request. <u>See</u>, <u>e.g.</u>, Pl.'s Opp. at 11. This argument however flies in the face of the plain language of the regulation.

As mentioned, the regulation requires that the appeal letter be received by OIP "within 60 days of the <u>date of the letter</u> denying [the] request," not within 60 days of the date of a requester's <u>receipt</u> of that letter. <u>See</u> 28 C.F.R. § 16.9(a). DOJ has reasonably interpreted the phrase "date of the letter" in its own regulation to refer to the date which appears on the letter and/or the date on which it is mailed to the requester, as opposed to the date on which it is received: a date which

it would be hard for the agency to establish.  To the extent that this Court finds that the regulation

is ambiguous on this point, it should accord DOJ's reasonable interpretation "substantial

deference."  See, e.g., Thomas Jefferson University v. Shalala, 512 U.S. 504, 512 (1994) (citing

Gardebring v. Jenkins, 485 U.S. 415, 430 (1988)).

Plaintiff was not prejudiced by any delay in his receipt of the November 15, 2006 letters.

If his own account of events is to be believed, he was in possession of those letters by December

26, 2006.  See Pl.'s Opp. at 2.  Upon receiving those letters on that date, he should have and

could have noted that they bore a date of November 15, 2006.  The letters each advised Plaintiff

that "[t]his is the final action on this . . . request" and that "[y]ou may appeal this decision on this

request by writing within 60 days from the date of this letter to the Office of Information and

Privacy . . ."  See Exhibits C and E to Boseker Decl. (emphasis added).  The date proscribed by

the letters,  "60 days from the date of this letter," was January 14, 2007, and thus Plaintiff had 19

days from December 26, 2006 (the day he claims to have received the letters) to January 14, 2007

(the deadline) to submit an appeal to the OIP.  He has no one to blame but himself for the fact

that, according to his own account, he waited until February 2, 2007 to submit an appeal.  And

regardless, OIP never received any appeal from Plaintiff, timely or untimely.


**II.    The EOUSA Conducted an Adequate and Reasonable Search**

In Defendant's opening brief, Defendant argued that, even if Plaintiff is deemed to have

exhausted his administrative remedies, EOUSA conducted an adequate search and produced the

records that it had that were responsive to Plaintiff's request.  See Def.'s MTD/MSJ at 14-16.

Defendant submitted a declaration by John Boseker with his opening brief, which he stated

"demonstrates through detailed, non-conclusory averments that, in this case, the EOUSA and

USAO/MDFL engaged in a "'good faith effort to conduct a search for the requested records,

using methods which [were] reasonably expected to produce the information requested'" and

which "describes in detail the type of search that was conducted to locate documents responsive

to Plaintiff's request." See Def.'s MTD/MSJ at 16 (citing Oglesby, 920 F. 2d at 68 and Ex. 2,

Boseker Decl. ¶¶ 6-12, 15.)

  In his latest filing, Plaintiff contends that the search conducted by EOUSA was not in fact

reasonable and adequate. See Pl.'s Opp. at 11-16. Each of the arguments he makes in support of

that proposition may be considered in turn.

  First, Plaintiff argues that the Boseker declaration, like the declarations found to be

wanting in Steinberg v. U.S. Dept. of Justice, 23 F.3d 548 (D.C. Cir.1994) ("Steinberg") and

Weisberg v. Dep't. of Justice, 627 F.2d 365, 371 (D.C. Cir.1980) ("Weisberg"), "'fail[ed] to

describe in any detail what records were searched, by whom, and through what process'" and

does not "'denote which files were searched, or by whom, do not reflect any systematic approach

to document location, and do not provide information specific enough to enable [the requester] to

challenge the procedures utilized'" and so are insufficient to support summary judgment. See

Pl.'s Opp. at 12-13 (citing Steinberg, 23 F. 3d at 551-52 and Weisberg, 627 F. 2d at 371).

Plaintiff also notes that this Court has previously found a FOIA related declaration submitted by

Mr. Boseker to be inadequate, in Jackson v. United States Attorney's Office, Dist. of New Jersey,

293 F.Supp.2d 38, 39 (D.D.C. 2003) ("Jackson"). See Pl.'s Opp. at 13-14. As Plaintiff observes,

in the Jackson case, this Court "ordered 'the defendants to provide additional and more detailed

affidavits explaining how the Jackson file was compiled,'" and instructed that "'[t]hose affidavits

must meet the standard already set forth by this Circuit in <u>Weisberg</u>, <u>Nation Magazine</u>, and <u>Steinberg</u>.'" <u>See</u> Pl.'s Opp. at 13-14 (citing <u>Jackson</u>, 293 F.Supp.2d at 39).

In fact, the Boseker declaration in this case meets the tests set forth in <u>Steinberg</u> and <u>Weisberg</u>. For one thing, it did describe at a sufficient level of generality which "records were searched" and "which files were searched." Specifically, the declaration noted that Plaintiff's FOIA request had sought "appointment letters and oaths of office [for] Latour Lafferty, Assistant U.S. Attorney for the Middle District of Florida, and Kathy Peluso, Appellate Counsel for the 11th Circuit U.S. Court of Appeals," and referred to "separate and distinct searches to be performed in the U.S. Attorneys Office for the Middle District of Florida (USAO/MDFL) in response [to] Mr. Bonaparte's requests." <u>See</u> Boseker Decl. ¶¶ 6-7, Exhibit A to Boseker Decl.. Thus, the Boseker declaration answered the question of what "records" and "files" were searched: namely the records and files of the USAO/MDFL.

Furthermore, the Boseker declaration did describe the "process" through which those records and files were searched, and certainly "reflect[ed] [a] systematic approach to document location." Specifically, it indicated that "EOUSA assigned two file numbers to each subject matter requested in the letter to reflect <u>the separate and distinct searches to be performed in the U.S. Attorneys Office for the Middle District of Florida</u> (USAO/MDFL) in response [to] Mr. Bonaparte's requests," that the portion of Plaintiff's FOIA request which concerned Kathy Peluso's Oath and Appointment in the USAO/MDFL had been assigned the FOIA Request Number 06-3440, and that portion of that request which concerned Assistant United States Attorney Latour Lafferty had been assigned the FOIA Request Number 06-3441. <u>See</u> Boseker Decl. ¶¶ 7-8, 11 (emphasis added). The Boseker declaration also noted that, "[b]y letter dated

November 15, 2006, EOUSA provided Mr. Bonaparte with a full release of 2 pages of records located by the FOIA contact for the USAO/MDFL[4] and forwarded to EOUSA for processing." See Boseker Decl. ¶ 9 and Exhibit C to Boseker Decl. (emphasis added). The declaration further noted "[n]o records were withheld from disclosure." Id. Furthermore, the Boseker declaration noted that by letter dated November 15, 2006, EOUSA informed Plaintiff that "[a] search for records located in the [USAO/MDFL] ha[d] revealed no responsive records regarding" the "FOIA Request Number: 06-3441" whose subject was "AUSA Latour Lafferty (Oath of Ofc./Appt)/Middle District of Florida" because "AUSA Lafferty is no longer employed with this office [i.e., the USAO/MDFL]." See Boseker Decl. ¶ 12 and Exhibit E to the Boseker declaration. As the declaration noted, EOUSA advised Plaintiff in the letter however that "[y]ou may be able to obtain the records you seek by contacting the [National Personnel Records Center]," and provided the address at which the National Personnel Records Center could be reached. See Boseker Decl. ¶ 12 and Exhibit E to Boseker declaration.

Moreover, the declaration provided "information specific enough to enable [the requester] to challenge the procedures utilized" and is sufficient to support summary judgment. This is evidenced by the fact that Plaintiff has been able to mount such a specific and spirited critique of EOUSA's search. For example, by revealing that the search for responsive documents was limited to the USAO/MDFL, the Boseker declaration opened the door for Plaintiff's claim that additional offices should have been searched.

In a more complex case, a greater level of detail might be required. The Boseker

---

[4] Thus, the Boseker declaration answered the question of "by whom" the search was conducted, namely: "the FOIA contact for the USAO/MDFL." See Boseker Decl. ¶ 9.

declaration however was sufficiently detailed for the sort of straightforward search at issue in this

case.  The D.C. Circuit has found that declarations that provided a similar level of detail were

adequate to demonstrate a reasonable search by an agency.  See, e.g., Perry v. Block, 684 F.2d

121, 127 (D.C. Cir. 1982) (finding that "two of the three government affiants identified with

reasonable specificity the system of records searched and the geographic location of those files");

id. at 127, n. 20 (observing that in one of the two adequate affidavits, the affiant "stated that he

had participated in and assisted in the supervision of the search for records pertaining to Mr.

Perry and that 'all levels of FmHA, including the County, State, and National levels," had been

searched" and that the other had "stated that he personally had searched OIG's Washington files

for information relating to appellant's request and that he had directed that a comparable search

be made of OIG's Kansas City office.") In Perry, the D.C. Circuit noted that  Weisberg v. Dep't.

of Justice, 627 F.2d 365, 371 (D.C. Cir.1980), one of the cases Plaintiff cites, "involved rather

special facts that tended to cast considerable doubt on the adequacy of the respective agencies'

searches; the existence of this doubt in each case rendered summary disposition inappropriate."

Perry, 684 F. 2d at 128.  The Court further explained that:

> In Weisberg, the agency's own assertions supported an inference that specifically
> identified material, solicited by the requester, might have remained in the agency's
> possession.  627 F.2d at 368-70.  The appellant in Weisberg also adduced specific
> evidence tending to show that the search conducted for the records had been
> inadequate. Id. at 368-69. . . .Based on the conflicting evidence and nebulous
> records in Weisberg . . .the court . . .  ruled that a single, conclusory affidavit
> failed to negate any inference that requested information was irretrievable through
> the employment of reasonable search procedures.

Id. at 127-28.  None of these circumstances exist here.  Nothing in the Boseker declaration

supports "an inference that specifically identified material, solicited by the requester, might have

remained in the agency's possession." Id. Nor has Plaintiff "adduced specific evidence tending

to show that the search conducted for the records had been inadequate." Id. Nor are there

"conflicting evidence and nebulous records" here. Id.

Moreover, it is insufficient for a requester such as Plaintiff to attempt to rebut the agency

affidavit with purely speculative claims, about what EOUSA might have found had it searched

elsewhere. See Carney v. U.S. Department of Justice, 19 F.3d 807, 813 (2d Cir. 1994); SafeCard

Services, Inc. v. S.E.C., 926 F.2d 1197, 1200 (D.C. Cir. 1991) (explaining that "[a]gency

affidavits are accorded a presumption of good faith, which cannot be rebutted by "purely

speculative claims about the existence and discoverability of other documents"); Ground Saucer

Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir.1981).

Nevertheless, should this Court deem such a step necessary, the undersigned counsel is

prepared to submit more detailed declarations. This will of course be unnecessary should this

Court dismiss Plaintiff's action based on his failure to properly exhaust his administrative

remedies.

Plaintiff argues that EOUSA's FOIA search was inadequate inasmuch as it failed to

search several offices which it could have searched for documents responsive to his FOIA

request, namely: (1) the Office of the Attorney General; (2) the Office of the Deputy Attorney

General; (3) the Office of Attorney Personnel Management in the Department of Justice; and

(4) the Office of Personnel Management. See Pl.'s Opp. at14-15. However, as Defendant has

previously noted, in responding to a FOIA/Privacy Act request, an agency is only under a duty to

conduct a reasonable search for responsive records, and need not demonstrate that all responsive

documents were found and that no other relevant documents could possibly exist.[5]  More to the

point, an agency is not legally required to  search every division or field office on its own

initiative in response to a FOIA request when the agency believes responsive documents are

likely to be located in one place.  See, e.g., Marks v. United States Department of Justice, 578

F.2d 261, 263 (9th Cir. 1978).  Nor is an agency required to search every record system; it only is

required to search those systems in which it believes responsive records are likely to be located.

See, e.g., Oglesby, 920 F.2d at 68.

  Finally, while Plaintiff acknowledges that EOUSA provided him with two pages of Oath

of Office records dated July 1, 1991 and March 3, 1992 in response to his request for Letter of

Appointment and Oath of Office records for Assistant United States Attorney ("AUSA") J.M.

Peluso, he complains that EOUSA failed to provide additional oaths taken by AUSA Peluso

upon expiration of successive appointments.  See Pl.'s Opp. at 16.  In fact, Plaintiff has admitted

and as the record reflects that the FOIA request which Plaintiff submitted requested "the letter of

appointment and oath of office" of "Latour Lafferty, Assistant United States Attorney for the

Middle District of Florida" and "Kathy J.M. Peluso, Appellate Counsel for the Eleventh Circuit

---

  [5]  See, e.g., Def.'s MTD/MSJ at 14-16; Oglesby, 920 F.2d at 68; Truitt v. Department of State, 897 F.2d 540, 542 (D.C. Cir. 1990) (the adequacy of a search is necessarily "'dependent upon the circumstances of the case.'"); Meeropol v. Meese, 790 F.2d 942, 952-53 (D.C. Cir.1986) (search is not presumed unreasonable simply because it fails to produce all relevant material); id. at 956 ("[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request."); Weisberg v. United States Department of Justice, 745 F.2d 1476, 1485 (D.C. Cir.1984); Weisberg v. United States Department of Justice, 705 F.2d 1344, 1351-52 (D.C. Cir. 1983); Perry v. Block, 684 F.2d 121, 128 (D.C. Cir.1982) (agency need not demonstrate that all responsive documents were found and that no other relevant documents could possibly exist); Weisberg v. United States Department of Justice, 627 F.2d 365, 371 (D.C. Cir. 1980); Kronberg v. Department of Justice, 875 F. Supp. 861, 869 (D.D.C. 1995); Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health and Human Services, 844 F. Supp. 770, 776 (D.D.C. 1993).

Court of Appeals," in the singular and does not refer to multiple letters or oaths.  See Def.'s

MTD/MSJ at 2 (emphasis added); Boseker Decl. ¶ 6 and Exhibit A to Boseker Decl. (emphasis

added); see also Compl. ¶¶ 5-6 (emphasis added); Pl.'s Opp. at 11 (emphasis added).  Likewise,

the appeal letter which Plaintiff claims to have sent to OIP refers to "the letter of appointment

and oath of office," and in no way suggests that Plaintiff expected or wanted multiple such letters

and oaths.  See, e.g., Compl., Ex. B; Pl.'s Decl., Ex. E.  Under these circumstances, it was

reasonable for EOUSA to produce one such letter and oath, particularly in the absence of

anything other than speculation on Plaintiff's part that multiple such letters and oaths exist.[6]

## CONCLUSION

Plaintiff cannot establish any violation of the FOIA or the Privacy Act.  Plaintiff did not

file an administrative appeal, thus Plaintiff failed to exhaust his administrative remedies.

Moreover, Defendant conducted a reasonable search, and turned over what documents it had that

were responsive to Plaintiff's request.  No more is required.

WHEREFORE, Defendant respectfully submits dismissal of this action is appropriate.

---

[6]  Plaintiff also takes issue with the notion that the National Personnel Records Center ("NPRC") is a necessary party in this litigation.  See Pl.'s Opp. at 8, 16-17.  Defendant had initially been of the impression, based on certain language in Plaintiff's Complaint, that he intended to put at issue the NPRC's response to the FOIA request he sent them.  See Def.'s MTD/MSJ at 14, n. 3 (citing Compl. ¶¶ 15-16 and Fed. R. Civ. P. 12(b)(7)).  Now that Plaintiff has made it clear that his action "is strictly narrowed to the claim of the EOUSA withholding of requested documents and its unreasonable and inadequate search," see Pl.'s Opp. at 17, for so long as Plaintiff maintains this position, Defendant agrees that the NPRC is not a necessary party.

Respectfully submitted,


___/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


___/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney



___/s/_____
JONATHAN C. BRUMER, D.C. BAR # 463328
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4815
Washington, D.C. 20530
(202) 514-7431
(202) 514-8780 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 7th day of September, 2007, I caused the foregoing

*Defendant's Reply in Support of Defendant's Motion to Dismiss or, in the alternative, for*

*Summary Judgment*, to be served on Plaintiff, <u>pro se</u>, by first-class mail, postage prepaid,

addressed as follows:


      Gregory Bonaparte
      R 22786-018
      Loretto Federal Correctional Institution
      Inmate Mail/Parcels
      P.O. Box 1000
      Loretto, PA 15940


          __/s/_____
          JONATHAN C. BRUMER, D. C. BAR # 463328
          Special Assistant United States Attorney
          Judiciary Center Building
          555 Fourth Street, N.W., Room E4815
          Washington, D.C. 20530
          (202) 514-7431
          (202) 514-8780 (facsimile)

**EXHIBIT   1**

GREGORY BONAPARTE
#22786-018, C2-0010
FEDERAL CORRECTIONAL INSTITUTION
2680 HWY. 301 SOUTH
JESUP, GEORGIA-31599

JACKSONVILLE FL 3
02 MAY 2006 PM

EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS
FREEDOM OF INFORMATION
600 E. STREET, N.W. ROOM 7300
WASHINGTON, D.C. 20530    DEPARTMENT OF JUSTICE

MAY - 9 2006

20530+0000

U.S. DEPARTMENT OF JUSTICE
EOUSA/FOIA/PA UNIT
BICN BLDG., RM. 7300
600 E ST., N. W.
WASHINGTON, DC 20530

RECEIVED
2006 DEC 19 AM 10: 39
DEPT. OF JUSTICE/EOUSA
FOIA/PRIVACY STAFF

06-3440
3441

GREGORY BONAPARTE
#22786-018
C2-0010 FCI
2680 HWY. 301 SOUTH
JESUP, GA. 31599

resent
DEC 22 2006

016H16601052
$00.39⁰
11/15/2006
Mailed From 20530
US POSTAGE

☐ Non-Deliverable As Addressed
☐ Unable To Forward
☐ Insufficient Address
☐ Moved Left No Address
☐ Unclaimed
☐ Attempted-Not Known
☐ No Such Street
☐ Vacant  ☐ Illegible
☐ No Mail Receptacle
☐ Box Closed, No ☐ Number
☐ Returned Fo...

Legal Mail – Open Only In Presence Of Inmate