## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREGORY BONAPARTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07–0749 (HHK) |
| ) | ECF |
| UNITED STATES DEPARTMENT OF ) | |
| JUSTICE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## DEFENDANT'S SUPPLEMENT TO THE RECORD AND RENEWED MOTION TO DISMISS OR,
## IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant, United States Department of Justice, by and through undersigned counsel, hereby renews its Motion filed on June 28, 2007 pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(7), to dismiss this action or in the alternative, enter summary judgment in favor of Defendant, pursuant to Fed. R. Civ. P. 56, because there is no genuine issue as to any material fact and the Defendant is entitled to judgment as a matter of law. Additionally, pursuant to the Court's Order dated January 25, 2008, the Defendant supplements the record by providing a detailed description of the search for responsive records in the above captioned matter and an additional two page document appearing responsive to the request for the letter of appointment for AUSA Peluso as an attachment to exhibit 1, which addresses the discrepancy noted in footnote 1 of the Judge's Memorandum and Opinion dated January 25, 2008. In support of its supplement, are the Second Declaration of John F. Boseker and the Declaration of Christina J. Griffiths, as Exhibits 1, and 2.

Plaintiff should take notice that any factual assertions contained in the accompanying affidavits and other attachments in support of Defendant's supplemetation will be accepted by the Court as true unless Plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in Defendant's attachments.  See, e.g., Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992); Local Civil Rule 7(h); Fed. R. Civ. P. 56(e).  Specifically, Rule 56(e) of the Federal Rules of Civil Procedure provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**A**.  **Supplemental Records Found on AUSA Peluso after Court Order**

Following the transmission of the Court's Order dated January 25, 2008,  Mr. Boseker requested  Ms. Griffith who is the FOIA coordinator at the United States Attorney's Office for the Middle District of Florida (USAO/MDFL) to prepare a declaration describing the searches performed in response to Mr. Bonaparte's request.  Ms. Griffiths e-mailed the documents sent to EOUSA according to her records. See Ex 1, Boseker Decl ¶4. Among the documents e-mailed was a two page document appearing responsive to the plaintiff's request for a letter of appointment of AUSA Peluso. See Id ¶4.  This document had not been previously reviewed nor

was a disclosure determination made theron by EOUSA.  See Id ¶ 4.  Mr. Boseker has searched

both FOIA files (AUSAs Peluso and Lafferty) created in conjunction with the handling of Mr.

Bonaparte's requests, and no letter of appointment appears within either of them. See Id ¶5.   As

a result, no EOUSA action has previously been taken with respect to this record. See Id ¶5.   This

explains the discrepancy noted in footnote one of the Judge's Memorandum and Order dated

January 25, 2008.   As Mr. Boseker affirms, this situation remains inexplicable as no subsequent

search was made following the Court's Order dated January 25, 2008. See Id ¶5.   However this

information is provided and enclosed with one page containing redaction of the home address of

the AUSA to whom the letter was addressed and the other pages released in its entirety.  See Ex1

Boseker Decl,  attachment letter dated May 13, 1991.  Had  EOUSA  received this document for

review, it would have been disclosed then, as now, with that home address withheld by

application of exemption (b)(6) to protect the AUSA from an unwarranted invasion of personal

privacy that would likely follow from that release. See ex 1 Boseker Decl ¶6.   EOUSA fully

disclosed the records it received in the original search, which were located and sent by the

United States Attorney's Office, Middle District of Florida (USAO/MDFL). See Id ¶3.   These

documents comprised  two pages attached by Mr. Bonaparte as exhibit E to his August 5, 2007

declaration.  No record was withheld in part or its entirety which was received by EOUSA

resulting from the original search performed by the FOIA contact for the (USA/MDFL) See Id

¶3.

**B.  Exemption 6**

Exemption 6 of the FOIA protects "personnel and medical files and similar files the

disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5

U.S.C. § 552(b)(6).  "The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999), *quoting Dept. of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982).  The Court has also emphasized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person." *U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 763 (1989).

In order to determine whether there would be a "clearly unwarranted invasion of personal privacy," the Court must balance the interests of protecting "an individual's private affairs from unnecessary public scrutiny," and "the public's right to governmental information." *Lepelletier*, 164 F.3d at 46 (interior quotation marks omitted), citing *United States Dept. of Defense v. FLRA*, 964 F.2d 26, 29 (D.C. Cir. 1992), *quoting Dept. of Air Force v. Rose*, 425 U.S. 352, 372 (1976). In determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA:  "[T]he *only* relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 46 (editing by the court, emphasis supplied, interior quotation marks omitted), quoting *United States Dept. of Defense v. FLRA*, 510 U.S. 487, 497 (1994).  *See also Reporters Committee*, 489 U.S. at 773.   Information that does not directly reveal the operation or activities of the federal government "falls outside the ambit of the public interest that the FOIA was enacted to serve." *Id.* at 775.  Further, "something, even a modest privacy interest, outweighs nothing every time." *National Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989); *but see Lepelletier*, 164

4

F.3d at 48 (in extraordinary circumstance where the individuals whose privacy the government

seeks to protect have a "clear interest" in release of the requested information, the balancing

under Exemption 6 must include consideration of that interest).

Here, the EOUSA uses this exemption to withhold a personal home address  that falls

within the protection of exemption 6's rubric of "invasion of personal privacy."  Thus,

Exemption 6 was invoked.  EOUSA performed a balancing test to ensure that the public interest

did not outweigh the privacy interest of the individual involved.

### C. Description Of Search for Responsive Records

On November 6, 2006, Ms. Christina J. Griffiths, FOIA coordinator for the United States

Attorney's Office for the Middle District of Florida (USAO/MDFL) received two FOIA requests

from EOUSA made by Mr. Bonaparte, each assigned numbers by EOUSA. See Ex 2, Griffiths

Declaration ¶5.  The first request, FOIA No. 06-3440, sought the letter of appointment and oath

of office for AUSA Kathy Peluso. See Id ¶5.  The second request, FOIA No. 06-3441, sought the

letter of appointment and oath of office for former AUSA LaTour Lafferty.  Ms. Griffith was the

principal FOIA contact who responded to these two requests. See Id ¶5.

In both instances, what Mr. Bonaparte requested were records which, if they existed, would

ordinarily be located in an individual's personnel file. See Id ¶ 6.  On November 6, 2006, Ms.

Griffiths sent an e-mail to Amy O'Neal, Lead Human Resource Specialist, asking her to search

for the specific records requested by Mr. Bonaparte on the two AUSAs. See Id. ¶6  On

November 7, 2006, Ms. Griffith recieved Ms. O'Neal's reply, in which she stated that she had

located and would send to Ms. Griffiths the appointment affadavit for AUSA Peluso, but that the

OPF for former AUSA Lafferty was no longer in the office's possession so she would be unable

to produce any documents from him. See Id ¶6. The personnel file for AUSA Lafferty had been shipped to the National Personnel Records Center as required by 5 C.F.R. 293.307. Shortly thereafter, Ms. Griffiths received two oaths and appointment affidavits and one letter of appointment regarding AUSA Peluso. See Id ¶6

After receiving the documents from the Human Resource staff, Ms. Griffiths prepared two responses on FOIA Form no. 010B. For request number 06-3440 (AUSA Peluso), Ms. Griffith transmitted via facsimile to FOIA unit, ten pages which included the e-mail between Ms. Griffiths and Ms. O'Neal, the completed form 010B, two oaths of office/appointment affadavits, and one appointment letter for AUSA Peluso, See Id ¶7

For request no. 06-3441 (former AUSA Lafferty), Ms. Griffith transmitted, via facsimile, to the FOIA unit, six pages, which included the e-mail between Ms. Griffith and Ms. O'Neal and the completed Form 010B indicating that Mr. Lafferty was no longer an employee and that his OPF was no longer in the office[1]. No responsive records accompanied this transmission. See Id ¶8. EOUSA provided Plaintiff notice of who to make the request to at the National Record Personnel Center (NPRC). According to Plaintiff's prior submissions, he did make a request to NPRC, and did not appeal their determination.

---

[1]The personnel file for AUSA Lafferty was shipped to the National Personnel Record Center as required by 5 C.F.R. 293.307. See Ex 2, Griffiths Decl ¶6. FOIA is only directed at requiring agencies to disclose those agency records for which they have chosen to retain possession and control. Kissinger v. Reporters Comm. For Freedom of the Press, 445 U.S. 136, 151-52, 100 S. Ct. 960, 63 L.Ed.2d 267 (1980). That the Government once possessed responsive documents yet no longer does at the time of the FOIA request does not preclude summary judgement in the Governments favor. FOIA does not impose a document retention requirement on Government agencies. Green v. Nat'l Archives & Records Admin., 992 F. Supp. 811, 818 (E.D. Va. 1998).

**D.**    __Searches Were Conducted and Responsive Materials Have Been Released__.

In responding to a FOIA request, an agency must conduct a reasonable search for responsive records. *Oglesby v. U.S. Dept. of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health, et al.*, 844 F. Supp. 770, 776 (D.D.C. 1993); *Weisberg v. U.S. Dept. of Justice*, 705 F.2d 1344, 1352 (D.C. Cir. 1983). This "reasonableness" standard focuses on the method of the search, not its results, so that a search is not unreasonable simply because it fails to produce responsive information. *Id*. at 777 n.4. An agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located. *Oglesby*, 920 F.2d at 68. Consistent with the reasonableness standard, the adequacy of the search is "dependent upon the circumstances of the case." *Truitt v. Dept. of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate." *Steinberg v. Dept. of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. Dept. of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent and reasonable. *Nation Magazine*, 71 F.3d at 892 n.7. Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it. *Maynard v. CIA*, 986 F.2d 547, 564 (1st Cir. 1993).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to

produce the information requested." *Oglesby*, 920 F.2d at 68; *see SafeCard Servs. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith." *Miller*, 779 F.2d at 1383; *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978), *cert. denied*, 445 U.S. 927 (1980). . Thus, once the agency has met its burden regarding adequacy of its search, the burden shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency. *Miller*, 779 F.2d at 1383. . EOUSA meets the reasonableness standard in conducting its searches and is therefore entitled to summary judgment.

The Boseker and Griffiths declarations demonstrate through detailed, non-conclusory averments that, in this case, the EOUSA and USAO/MDFL engaged in a "good faith effort to conduct a search for the requested records, using methods which [were] reasonably expected to produce the information requested." Oglesby, 920 F. 2d at 68. The declarations describes in detail the type of search that was conducted to locate documents responsive to Plaintiff's request.

## V. CONCLUSION

Defendant conducted a reasonable search, and turned over what documents it had that were responsive to Plaintiff's request. No more is required.

WHEREFORE, Defendant respectfully submits that the Court lacks jurisdiction in this lawsuit and that dismissal is appropriate.

Respectfully submitted,


__/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

__/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


__/s/_____
Raymond A. Martinez TX.. BAR # 13144015
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4815
Washington, D.C. 20530
 202) 514-9150
(202) 514-8780 (facsimile)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of February 2008, I caused the foregoing Supplement to the record and Renewed Motion to Dismiss or, in the Alternative for Summary Judgement to be served on plaintiff, pro se, by first class mail, postage prepaid, addressed as follows:

Gregory Bonaparte
R 22786-018
Loretto Federal Correctional Institution
Inmate mail/Parcels
P.O. Box 1000
Loretto, PA 15940

_____/s/_____
Raymond A. Martinez TX.. BAR # 13144015
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4815
Washington, D.C. 20530
(202) 514-9150
(202) 514-8780 (facsimile)

Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GREGORY BONAPARATE,                    )
                        Plaintiff,     )
                                       )
          v.                           )     Civ. No.1: 07-00749 (HHK)
                                       )
UNITED STATES DEPARTMENT OF            )
      JUSTICE,                         )
                        Defendant.     )
_____)

## SECOND DECLARATION OF JOHN F. BOSEKER

I, John F. Boseker, declare the following to be a true and correct statement of additional facts, supplementing and incorporating by reference, my previous submission in the above-captioned action:

1)      The purpose of this supplemental declaration is to address the adequacy of search issue, pursuant to the Court's Order of January 25, 2008, respecting certain records sought by Mr. Bonaparte dealing with oaths of office and letters of appointments of two Assistant United States Attorneys thought to be located in the United States Attorneys Office for the Middle District of Florida ("USAO/MDFL"). This subject had only been cursorily addressed in my first submission since the principal ground for the Motion for Summary Judgment was failure to exhaust administrative remedies, a jurisdictional question.

2)      In compliance with the Order, EOUSA directed the FOIA Contact for the USAO/MDFL, Chris Griffiths, to prepare a declaration detailing the searches performed respecting the two personnel-related requests at issue in this litigation. That declaration is separately submitted.



3)    EOUSA fully disclosed the records received, which were located and sent by the USAO/MDFL, as a result of the original search. These documents comprised the two pages attached by Mr. Bonaparte as Exhibit E to his August 5, 2007 declaration (i.e. Oaths of Office for AUSA Peluso). No record was withheld (in part or in its entirety) which received by EOUSA resulting from the original search performed by the FOIA Contact for the USAO/MDFL..

4)    However, following transmission of the Court's Order to the FOIA Contact, and advising of the need to prepare a declaration describing the searches performed in response to Mr. Bonaparte's requests, Ms. Griffiths e-mailed the documents sent to EOUSA, (according to her records) and among them was a two- page document appearing responsive to the request for a letter of appointment. This document had not previously been reviewed and disclosure determination made thereon by EOUSA

5)    I have searched both FOIA files (AUSAs Peluso and Lafferty) created in conjunction with the handling of Mr. Bonaparte's requests, and no letter of appointment appears within either of them. As a consequence no EOUSA action has previously been taken with respect to this record. This situation remains inexplicable as the FOIA Contact made no subsequent search for any records following receipt of the Court's Order.

6)    Attached hereto are the two pages, with one containing the redaction of home address of the AUSA to whom the letter was addressed and the other released in its entirety. Had EOUSA received the document for review, it would have been disclosed then, as now, with that the home address withheld  by application of Exemption (b)(6)[1] to protect the AUSA from an unwarranted invasion of personal privacy that would likely follow from that release. No public

---

[1]  5 U.S.C. section 552(b)(6) prohibits disclosure of all information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."

interest exists to outweigh the privacy protection afforded this exemption respecting the

information to which this exemption has been applied, nor has any been asserted. Moreover, no

consent or authorization to disclose this protected information has been provided to this office by

Mr. Bonaparte signed by AUSA Peluso.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 20 , 2008.

JOHN F. BOSEKER

Attorney Advisor, EOUSA



U.S. Department of Justice

*Office of Attorney Personnel Management*

Washington, D.C. 20530

MAY 1 3 1991

Ms. Kathy J.M. Peluso
b(6)

Dear Ms. Peluso:

I am pleased to inform you that the recommendation for your temporary, 14-month appointment as an Assistant United States Attorney for the Middle District of Florida at a salary of $71,700 per annum is approved.  Final appointment is subject to budgetary limitations and a background character investigation.

Frequently, applicants ask questions about the nature of the background investigation and about problems that may surface in it.  The following information is intended to answer the questions which are asked most often.

By Department of Justice order, background investigations are to be conducted by the Federal Bureau of Investigation (FBI). This investigation is extremely thorough.  At a minimum, the FBI will contact all references and close personal associates listed on the security form you completed, any former spouse(s), and all former employers.  Please note the FBI will also contact your current employer.  Co-workers, past and present, will also be interviewed.  The FBI will conduct neighborhood checks on all residences, interviewing landlords as well as neighbors.  It will verify your attendance at all institutions of higher education. It will also contact regional credit bureaus covering areas where you have lived and all police departments for jurisdictions in which you have resided.  If you served in the military, the FBI will review your military records.  The FBI will check on any history of alcohol abuse.  The FBI will also check on any past (or present) use of controlled substances.  As part of the investigation, this office will request a report from the Internal Revenue Service relative to the status of your income tax return filings.



NOTE:
REC'D VIA FAX 4/26/00. JRB

RJB
7C

-2-

In a few unfortunate cases, we have had to withdraw an employment offer because the investigation revealed information that precluded a security and/or suitability clearance (e.g., failure to timely file income tax returns, serious credit problems, abuse of alcohol, history of usage of controlled substances, misrepresentations on the security form).  It creates significant hardship for both the Department and the offeree if the offer must be withdrawn at the end of the lengthy process.

In order to prevent such hardship, we want to alert you to these potential problems now, at the outset, and invite you to discuss any concerns you may have.  Please feel free to call D. Glen Stafford, Manager, Attorney Hiring Staff, Executive Office for United States Attorneys (Commercial: 202-501-6818 or Government:  FTS: 241-6818) if you wish to discuss this.

In addition, please note that it is the policy of the U.S. Department of Justice to achieve a drug-free workplace and persons selected for employment here may therefore be required to pass a urinalysis test which screens for illegal drug use prior to appointment.

In the meantime, final processing of your application has begun and you will be notified upon completion of this procedure. Please understand and appreciate the confidentiality of your background investigation and note that until it is completed by the FBI, we cannot give you a status report.

Sincerely,

Joyce L. Ellis
Deputy Director
Office of Attorney Personnel Management

Copy to:

Honorable Robert W. Genzman
United States Attorney
Middle District of Florida
Tampa, Florida

Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GREGORY BONAPARTE,

    Plaintiff,

      v.

Civil No. 1:07-00749 (HHK)

UNITED STATES DEPARTMENT OF
JUSTICE,

    Defendant.

## DECLARATION OF CHRISTINA J. GRIFFITHS

I, Christina J. Griffiths, declare the following to be a true and correct statement of facts:

1.    This Declaration addresses actions taken regarding two FOIA requests made by Mr. Gregory Bonaparte and searches performed to locate responsive records to these requests. The statements I make herein are either on the basis of my own personal knowledge or on the basis of knowledge acquired by me through the performance of my official duties.

2.    One of my current collateral duties includes serving as the Freedom of Information Act ("FOIA") coordinator for the United States Attorney's Office for the Middle District of Florida ("USAO/MDFL"). Since approximately the year 2000, I have been the FOIA coordinator between the USAO/MDFL and the Executive Office for United States Attorneys ("EOUSA") FOIA office. My responsibilities as the FOIA coordinator include the following: transmitting a FOIA request directly received in the USAO/MDFL to EOUSA as required by regulation; assigning new FOIA requests received from EOUSA to the several FOIA contacts throughout USAO/MDFL who are tasked with searching for records responsive to a particular FOIA requests; researching various computer databases and other tracking systems to locate files, which may contain potentially responsive documents; contacting the FOIA contacts, Assistant



United States Attorneys (AUSAs) and other staff requesting that they search for potentially

responsive records; and tracking the progress and responses to searches performed for requested

records. I am the liaison between the various FOIA Contacts in the USAO/MDFL and EOUSA

in these matters, and on occasion, I process FOIA requests, myself,  as a FOIA Contact.

3.    In this capacity, I handle approximately ninety FOIA requests per year.

The FOIA Contact (or other office staff as required) is responsible for searching for documents

that might be responsive to a FOIA request. A search for files which may contain responsive

records is usually conducted by use of the computer tracking system LIONS, by which an

individual's records are accessed by name and location of the records identified.  I conduct that

search and provide the information to the FOIA Contact assigned to process the request.   If

documents are located,  the FOIA Contact then reviews them and separates responsive records

from non-responsive records based upon the subject of the request. After the FOIA Contact

determines the response will not require a fee letter (from EOUSA based upon excessive search

time and/or volume of records located), the FOIA Contact then copies and forwards the

responsive records to EOUSA for their review and disclosure determination.   If no responsive

records are located, the FOIA Contact so notifies EOUSA and provides a description of the

search performed.

4.    Due to the nature of my duties, I am familiar with the specific procedures

followed by this Office in searching for and responding to Mr. Bonaparte's two FOIA requests

5.    On November 6, 2006, I received two FOIA requests from EOUSA made by Mr.

Bonaparte, each assigned numbers by EOUSA . The first request, FOIA No. 06-3440, sought the

letter of appointment and oath of office for AUSA Kathy Peluso.  The second request, FOIA No.

2

06-3441, sought the letter of appointment and oath of office for former AUSA LaTour Lafferty. I was the principal FOIA Contact who responded to these two requests.

6.     In both instances, what Mr. Bonaparte requested were records which, if they existed, would ordinarily would be located in an individual employee's personnel file. AUSA personnel files are maintained in Official Personnel Files ("OPF") by the Human Resources Department within USAO/MDFL. Therefore, on November 6, 2006, I sent an e-mail to Amy O'Neal, Lead Human Resources Specialist, asking her to search for the specific records requested by Mr. Bonaparte on the two AUSAs. On November 7, 2006, I received Ms. O'Neal reply, in which she stated that she had located and would send me the appointment affidavit for AUSA Peluso, but that the OPF for former AUSA Lafferty was no longer in our office's possession so she would be unable to produce any documents for him. The personnel file for AUSA Lafferty was shipped to the National Personnel Records Center as required by 5 C.F.R. 293.307. Shortly thereafter, I received two oaths and appointment affidavits and one letter of appointment regarding AUSA Peluso.

7.     After receiving the documents from the Human Resources Staff, I prepared two responses on FOIA Form No. 010B. For request number 06-3440 (AUSA Peluso), I transmitted, via facsimile to the FOIA Unit, telephone number 202-616-6478, as is my standard practice, ten pages which included the e-mail between myself and Ms. O'Neal, the completed Form 010B, two oaths of office/appointment affidavits, and one appointment letter for AUSA Peluso, to EOUSA.

8.     For request number 06-3441 (former AUSA Lafferty), I transmitted, via facsimile to the FOIA Unit, telephone number 202-616-6478, as is my standard practice, six pages, which included the e-mail between myself and Ms. O'Neal and the completed Form 010B indicating

3

that Mr. Lafferty was no longer an employee and that his OFP was no longer in our office.  No

responsive records accompanied this transmission.

9.    On January 25, 2008, EOUSA requested that I provide a factual statement

regarding the searches performed in response to Mr. Bonaparte's two FOIA requests.  The above

contains a summary of the actions I took regarding these two requests.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of February, 2008 in Tampa, Florida.

CHRISTINA J. GRIFFITH
FOIA Coordinator
Office of the United States Attorney
Middle District of Florida, Tampa Division
400 N. Tampa Street, Suite 3200
Tampa, FL  33602
Telephone: (813) 274-6079

4